Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3939 | **DATE** | 2/5/2003 |
| **CASE TITLE** | John Neal vs. Ingalls Memorial Hospital | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____ .
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for leave to file local rule 56.1 response and brief in opposition to summary judgment [18-1] is granted; defendant's motion to strike plaintiff's response to motion for summary judgment [22-1] is denied. Defendant's motion for summary judgment [12-1] is granted. Case terminated.

(11) ■ [For further detail see order attached to the original minute order.]

No notices required, advised in open court.
No notices required.
Notices mailed by judge's staff.
Notified counsel by telephone.
✓ Docketing to mail notices.
Mail AO 450 form.
Copy to judge/magistrate judge.

courtroom deputy's initials: MM

number of notices

FEB 11 2003 date docketed

docketing deputy initials

Document Number: 27

date mailed notice

Date/time received in central Clerk's Office   mailing deputy initials

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN NEAL, )
 )
          Plaintiff, ) Case No. 01 C 3939
v. )
 )
INGALLS MEMORIAL HOSPITAL, ) Judge Joan B. Gottschall
 )
          Defendant. )

## MEMORANDUM OPINION & ORDER

Plaintiff John Neal sued his employer defendant Ingalls Memorial Hospital ("Ingalls") claiming that Ingalls (1) discriminated against him based on his race and gender by denying him a promotion and failing to pay him for time spent at a grievance hearing, in violation of 42 U.S.C. § 1981 (race claim) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) (race and gender claims), and (2) breached an employment contract with him by allegedly failing to comply with provisions in the employee handbook when Ingalls posted a job vacancy, in violation of Illinois state law. Additionally, although it is not evident from the complaint, according to the parties' briefs Neal also may have raised claims of intentional and negligent infliction of emotional distress under Illinois state law. Ingalls filed a motion for summary judgment on all claims.[1] For the reasons set forth below, Ingalls' motion for summary judgment

---

[1] Ingalls also filed a motion to strike Neal's late opposition to the motion for summary judgment. Ingalls' motion is well-grounded: Neal failed to comply with several court-ordered deadlines, even when the court gave Neal a final extension. The court is unsympathetic to Neal's excuses and could properly grant Ingalls' motion to strike, *see Spears v. City of Indianapolis*, 74 F.3d 153, 157-58 (7th Cir. 1996). But the court prefers to deal with the motion for summary judgment on the merits. Accordingly, Ingalls' motion to strike Neal's opposition brief is denied and Neal's motion for leave to respond to the motion for summary judgment *instanter* is granted.

is granted.

**Background**

The following facts are undisputed unless otherwise noted. Neal, a current Ingalls employee, has worked for the hospital since 1984 when he started as a housekeeper. Neals later held other positions at Ingalls: he worked as a "stores attendant," then as a technician in the Central Processing Distribution Department and, most recently, as a technician in the Sterile Processing Department.

*Facts Relating to Neal's Claim for Failure to Promote & Breach of Contract*

Ingalls has an employee handbook that offers a general description of some of the hospital's benefits and policies. On the first page of the employee handbook, there is an express disclaimer which states: "This handbook is provided only as an advisory guide and is not, nor is it intended to be, a contract of employment." (Pl.'s Ex. List, Tab B at 1.) The specific provision at issue in this case relates to the posting of job vacancies. On that issue, the handbook states in relevant part: "Job openings are posted on the Employee Bulletin Boards in the hospital . . . Job postings list the entry level rate of pay, however, employees may be considered for a rate above the minimum based upon length of service and related experience." (*Id.* at 27.)

In late 1998, the Lead Technician position became available in the Sterile Processing Department. The Lead Technician is expected to perform many of the same duties as other sterile processing technicians, but also must handle additional scheduling, inventory and supervisory duties. In accordance with the hospital's job posting policy, in late 1998 or early 1999, the manager of the Sterile Processing Department, Cathy Dehmer, posted a notice on the

department's bulletin board regarding the vacant Lead Technician position, stating that anyone interested should see her. The notice evidently did not include the entry level pay rate or a job description for the position.

Neal and three other sterile processing technicians subsequently spoke to Dehmer about the Lead Technician position. None of them applied for it.[2] Because no one within the department applied for the position, Ingalls made the job available to employees in other departments.[3] No hospital employees bid for the position, however, so Ingalls opened the position to the public.[4] Ingalls ultimately hired Karen Matthews, who was qualified for the job, and also was the only person who applied for the position.[5] No later than February 22, 1999, Neal knew that Ingalls hired Matthews for the Lead Technician position. He did not know what Matthews' qualifications were for the position.

At his deposition, Neal was asked to explain the basis for his gender and racial discrimination claims. When asked why he felt discriminated against based on gender, Neal

---

[2]In response to paragraph 14 of Ingalls' L.R. 56.1(a)(3) statement of undisputed material facts, Neal admitted that he did not apply for the position, but denied the statement with respect to the other three technicians, claiming lack of knowledge. Neal's lack of knowledge is insufficient to refute the affidavit offered by Ingalls in support of paragraph 14. Accordingly, paragraph 14 is deemed admitted under L.R. 56.1.

[3]This fact is also deemed admitted: Neal's denial based on lack of knowledge is insufficient to refute the affidavit offered by Ingalls in support of this fact.

[4]Deemed admitted: see footnote 3.

[5]Deemed admitted: Neal claims the bid process was manipulated to prevent Neal and others from applying for the position, but offers no evidence other than his unsupported speculation; again, this is insufficient to refute the affidavit offered by Ingalls in support of this fact.

answered that "he was the only male [in the department]." (Neal Dep. Tr. at 118:5-11 (App. Supp. Def.'s Mot. Summ. J. at Tab A).) When asked why Neal felt he was denied the promotion based on race, he responded, "I don't have an answer at this particular time for that." (*Id.* at 118:23 – 119:6.)

*Facts Relating to Claim for Failure to Pay Neal for Time Spent at Grievance Hearing & Emotional Distress Claims*

Ingalls has an employee grievance procedure which allows employees to address a variety of concerns regarding the workplace. Ingalls' Director of Human Resources, Chris Hargreaves, oversees and coordinates the grievance process. As part of that process, an employee may choose one "support person" to attend the grievance hearing. Under the grievance procedure there is no requirement to pay an employee for time spent at a grievance hearing as a support person. Further, Hargreaves has never authorized payment for any individual acting as a support person.

In April 2000, Ingalls' employee Sheila Joyner asked Neal to act as her support person, which he agreed to do. When Neal asked Hargreaves (both before and after Joyner's grievance hearing) whether he would be paid for the two hours he spent as Joyner's support person, Hargreaves told him that the procedures did not require Neal to be paid for that time. Neal testified at his deposition that he did not think Hargreaves discriminated against him on the basis of either gender or race when Hargreaves decided not to pay him for time spent as Joyner's support person.

On December 4, 2000, Neal filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). He filed his complaint in this court on May 29, 2001.

4

## Analysis

Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must examine the admissible evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[U]nless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," there is no issue for trial. *Anderson*, 477 U.S. at 248.

### A. Discrimination Claims Based on Failure to Promote

Neal's gender and racial discrimination claims based on Ingalls' alleged failure to promote him to the Lead Technician position fail for two reasons: the claims are time-barred and Neal has failed to establish a *prima facie* case of either gender or racial discrimination.

As a prerequisite to bringing his Title VII claim, Neal had to file a timely charge of discrimination with the EEOC. *Cervantes v. FCC Nat'l Bank*, No. 98 C 6730, 2000 WL 283973, at *3 (N.D. Ill. Mar. 14, 2000). "In Illinois, a Title VII plaintiff must file a charge within 300 days of the discrimination. The 300-day limitation period commences on the date the employee learned of or should have learned of the allegedly discriminatory actions." *Id.* Regarding his

5

§ 1981 claim, Neal had two years from the discriminatory action to bring his claim. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660-64 (1987) (state's statute of limitations for personal injuries governs § 1981 claims); *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 775 n.2 (7th Cir. 1995) (Illinois' statute of limitations for personal injury claims is 2 years). Here, the statute of limitations began to run no later than February 22, 1999 when Karen Matthews took over the Lead Technician position. Neal therefore should have filed his EEOC charge no later than December 19, 1999, yet he did not file it until December 2000. Likewise, he needed to file his § 1981 claim no later than February 22, 2001—but Neal did not file his complaint in this litigation until May 29, 2001.

Neal thus missed the two relevant statutes of limitations by a substantial amount of time. He does not assert any grounds for tolling the statutes of limitations. Rather, Neal contends his federal claims for failure to promote are not time-barred because they fall within an exception to the statute of limitations, *i.e.*, the continuing violation doctrine. Under the continuing violation doctrine, as long as an act contributing to a hostile work environment claim occurs within the statute of limitations, "the entire time period of the hostile environment may be considered by a court for purposes of determining liability." *National Passenger Railroad v. Morgan*, ___ U.S. ___, 122 S. Ct. 2061, 2074 (2002). Significantly, as the Supreme Court recently clarified, the continuing violation doctrine applies to hostile work environment cases, not to claims regarding discrete acts of discrimination. *Id.* at 2073. "Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 2072. And Ingalls' alleged failure to promote Neal clearly constitutes a discrete discriminatory act. *Id.* at 2073 (discrete acts include "terminations, failure to promote, denial of transfer, or refusal to

hire"). Accordingly, the continuing violation doctrine is inapplicable to Neal's failure to promote claim.

Moreover, even if the continuing violation doctrine did apply, Neal has not established the existence of a disputed issue of material fact. Rather, Neal claims that *if* his claim is allowed to proceed, he is "prepared to demonstrate that he is a victim of a serial violation and that [Ingalls] has maintained a pattern and practice of discrimination [against Neal]." (Pl.'s Mem. Opp. Mot. Summ. J. at 3.) But as Ingalls correctly points out, Neal can survive summary judgment only if he supports this contention with evidence from the record, which Neal has utterly failed to do. Given Neal's failure to offer any supporting evidence, the court finds there is no disputed issue of material fact regarding whether such a pattern of discrimination and harassment exists.

Even putting aside Neal's statute of limitations problems, he has failed to establish a *prima facie* case of either racial or gender discrimination. Neal cannot establish a *prima facie* case for his failure to promote claim, unless he shows that (1) he is a member of a protected group; (2) he applied for and was qualified for the Lead Technician position; (3) he was rejected for the position; and (4) Matthews, who was hired for the position, was not more qualified than Neal. *Brill v. Lante Corp.*, 119 F.3d 1266, 1270 (7th Cir. 1997). Neal, however, concedes that he never applied for the Lead Technician position. His failure-to-promote claims therefore fail as a matter of law.

### B. Discrimination Claims Based on Failure to Pay Neal for Time Spent at Grievance Hearing.

Neal's discrimination claim based on Ingalls' failure to pay him for the time spent at

Joyner's grievance hearing as her support person also fails as a matter of law: he cannot show that either similarly-situated women, or similarly-situated white people received better treatment than he did. It is undisputed that Ingalls' grievance policy does not require payment to an employee for time spent at a grievance hearing as a support person. Nor has Hargreaves ever authorized payment for any individual—white or black, male or female—for time served as a support person. Further, Neal testified that he did not think Hargreaves discriminated against him on the basis of either gender or race when Hargreaves decided not to pay Neal for time spent as Joyner's support person. Given Neal's failure to offer any evidence of disparate treatment, his claim cannot survive. *See Greer v. Bd. of Educ.*, 267 F.3d 723, 728 (7th Cir. 2001) (affirming summary judgment against plaintiff who failed to offer evidence of disparate treatment).

### C. State Law Breach of Contract Claim

Neal's state law breach of contract claim fares no better than his federal claims. Neal asserts that (1) Ingalls' employee handbook constitutes an employment contract, and (2) Ingalls breached that contract by (allegedly) failing to follow the job-posting policy set forth in the handbook when it posted the opening for the Lead Technician position. The fatal flaw in this claim is that Ingalls' employee handbook is not a contract: for such a handbook to constitute an enforceable contract, "the traditional requirements for contract formation [must be] present." *Duldulao v. St. Mary of Nazareth Hospital Center*, 505 N.E.2d 314, 318 (Ill. 1987). Here, "[t]he employee handbook specifically disclaims that it is a contract, and the handbook itself is the best evidence of whether the parties intended to form a contract. [The court] need[s] nothing more to

8

conclude that it is not a contract."[6] *Freeman v. Chicago Park Dist.*, 189 F.3d 613, 617 (7th Cir. 1999); *see, e.g., Davis v. Time Mirror Magazines, Inc.*, 697 N.E.2d 380, 388 (Ill. App. Ct. 1998) (disclaiming language in handbook precludes contract formation).

Without a valid and enforceable contract, Neal has no breach of contract claim. *See Nielsen v. United Servs. Auto. Ass'n*, 612 N.E.2d 526, 529 (Ill. App. Ct. 1993) (valid and enforceable contract is essential element of breach of contract claim). The court therefore need not consider whether any disputed issue of material fact exists regarding breach or damages.

### D. State Law Claims for Negligent/Intentional Infliction of Emotional Distress

Regarding Neal's claims for negligent and/or intentional infliction of emotional distress, it is not clear from the complaint that Neal even raised these claims. In his prayer for relief, as part of his request for compensatory damages, Neal merely asked for compensation for "personal humiliation, mental anguish and suffering and other forms of mental and emotional distress." (Compl. at 5.) Where there is a viable racial or gender discrimination claim, such compensatory damages are available—plaintiffs need not bring emotional distress tort claims to recover for mental and emotional damages. Thus, had Ingalls not addressed the emotional distress claims in its motion for summary judgment, the court would not have considered the emotional distress torts to be at issue in this case. Because the parties briefed those claims, however, the court will address the parties' arguments.

---

[6]Neal's reliance on *Doyle v. Holy Cross Hospital*, 708 N.E.2d 1140, 1145 (Ill. 1999), is to no avail because that case is distinguishable. Significantly, the *Doyle* court did not hold that disclaiming language is never effective. Rather, based on the particular facts presented, the court found that the disclaiming language, which the employer added to the handbook, was an invalid unilateral modification by the employer that lacked consideration. *Id.* at 1145. In contrast, Neal offers no basis for the court to find Ingalls' express disclaimer invalid.

9

According to Neal, he claims that in breaching the "contract" regarding open job positions, Ingalls intentionally or negligently inflicted emotional distress on him. But there are no allegations in the complaint, let alone any evidence in the record, to support these claims. For intentional infliction of emotional distress, Neal would have to prove that Ingalls' conduct (evidently through Dehmer) was extreme and outrageous, that Ingalls intended its conduct to cause Neal severe emotional distress and that its conduct did, in fact, cause severe emotional distress. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 702 (7th Cir. 1993). "[T]he law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it." *Id.* at 703 (internal quotation marks omitted). Because Neal offers no affirmative evidence regarding any of those elements, he cannot show there is a dispute issue of material fact regarding his claim for intentional infliction of emotional distress. His claim therefore fails as a matter of law.

Nor does Neal present a viable claim for negligent infliction of emotional distress. To recover for negligent infliction of emotional distress, Neal must provide evidence that Ingalls owed him a duty, Ingalls breached that duty, and as a result of that breach, Neal suffered emotional distress. *See Chen v. Mayflower Transit, Inc.*, No. 99 C 6261, 2002 WL 1632414, at *11 (N.D. Ill. July 22, 2002). But more importantly, to survive summary judgment Neal must produce evidence demonstrating that as a result of Ingalls' alleged negligence, Neal experienced "some form of *physical danger or harm* as the catalyst for the resulting emotional trauma. Otherwise the scope of recovery for negligent infliction of emotional distress would be coterminous with recovery for negligence itself. The Illinois Supreme Court clearly did not

intend that situation."[7] *Id.* at *12 (emphasis added, internal quotation marks and citations omitted). Understandably, most claims for negligent infliction of emotional distress stem not from claims like Neal's but from accidents or offensive touching. *Choi v. Chase Manhattan Mortgage Co.*, 63 F. Supp. 2d 874, 888 (N.D. Ill. 1999). Given Neal's failure to offer evidence relating to any of the necessary elements for a negligent infliction of emotional distress claim, he has also failed to show that any disputed issue of material fact exists with respect to this claim.

**Conclusion**

As explained above, Ingalls' motion for summary judgment is granted.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATE: February 5, 2003

---

[7]Under Illinois law, direct victims of negligence and bystanders who were in the zone of physical danger may have claims for negligent infliction of emotional distress. *Chen*, 2002 WL 1632414 at *11. For purposes of this discussion, the court treats Neal as a direct victim rather than a bystander.

11